Stanley L. HARDING, Plaintiff,

v.

HARRISBURG STORAGE CO. and Weaver Warehouses, Inc., Defendants.

Civ. A. No. 6618.

United States District Court
M. D. Pennsylvania.

Sept. 13, 1961.

Metzger, Wickersham & Knauss, Harrisburg, Pa., for plaintiff.

John Y. Scott, Harrisburg, Pa., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for defendants.

FOLLMER, District Judge.

This matter is before the Court on motion of defendants for judgment notwithstanding the verdict and in the alternative for a new trial, following a directed verdict in favor of plaintiff.

The case arose out of a fire occurring on January 12, 1957, in the warehouse of defendant, Weaver Warehouses, Inc. (successor corporation to Harrisburg

Storage Co.), at No. 429 South Second Street, Harrisburg, Pennsylvania. The goods of the plaintiff were destroyed in said fire.

The plaintiff, an Army officer, stationed at Carlisle Barracks, Carlisle, Pennsylvania, received an overseas assignment in the spring of 1956. Since he could not take his household effects to his new station, plaintiff requested the Army Transportation Office at Carlisle Barracks to arrange for commercial storage for them during his absence. Under date of May 14, 1956, defendant, Harrisburg Storage Co., by its general manager, solicited the Transportation Office of the Carlisle Barracks for it to be designated as the warehouse facility for the storage of the household goods of departing Army officers. Pursuant to this letter, on May 16, 1956, the Traffic Manager and Transportation Officer at Carlisle Barracks made an inspection of the Harrisburg Storage Co. (later Weaver Warehouses, Inc.), meeting with representatives of the latter. The Carlisle officers were shown inside property marked 437 and located on South Second Street, Harrisburg, Pennsylvania, and described by them as "the taller of the two buildings." They ascended in an elevator in No. 437 and inspected quite a few floors. Each floor they inspected had cement ceilings, cement floors, and the separate rooms all had steel doors. Each floor that they inspected had fire hose in them for fire control and the building had a fire alarm system in it with bars on the windows, with wire mesh, indicating to the inspectors that the building would be fire resistant or a fireproof warehouse.

Following the inspection, the Carlisle Barracks officers informed the storage company officials that the warehouse was acceptable and would be accepted for storage, provided the cost factor involved would be cheaper than Government storage. No other building than No. 437 was inspected and no other building was shown the inspectors by the storage company officials.

On July 19, 1956, plaintiff's goods were inventoried for removal to storage and the destination point noted on the inventory slip was No. 437 South Second Street, Harrisburg, Pennsylvania. Incidentally, it was admitted that Weaver Warehouses, Inc., became the purchaser of the Harrisburg Storage Co., and was the owner of No. 437 South Second Street on the day of the fire and for some seven months prior thereto.

Following the receipt of plaintiff's property, Weaver issued a warehouse receipt dated July 19, 1956, to the Finance Officer at Carlisle Barracks on account of plaintiff. This receipt specifically stated that the said goods were " * * * to be stored in the warehouse of Weaver Warehouses, Inc. hereinafter called the 'Company,' (In Warehouse At) 437 S. Second St., Harrisburg, Penna. * *." [1]

Notwithstanding the fact that only the storage facility at No. 437 was inspected and that the receipt called for storage at No. 437, defendant, Weaver Warehouses, Inc., actually stored the goods at No. 429 South Second Street, an entirely separate warehouse, which warehouse was the site of the fire several months later on January 12, 1957, which resulted in the destruction of plaintiff's goods. No. 429, sometimes identified as the J. I. Case Building, was a three-story building of wood interior construction, with no standpipe fire system, no fire alarm system and no fire sprinkler system.

On the conclusion of plaintiff's case, the Court directed defendants to make an offer of proof as to what defendants expected to introduce by way of evidence to meet the plaintiff's case. Defendants then made their offer, to which plaintiff objected. The Court then said (Transcript of Trial Record, pages 282 and 283):

"The Court: Well, I think the pattern has been pretty well established by the Pennsylvania Supreme Court in the case of Anderson vs. Murdock Storage & Transfer Co., 371 Pa. 212

1. The Uniform Commercial Code of Pennsylvania requires that the receipt state the location of the warehouse where the goods are stored. 12A P.S. § 7–202.

[88 A.2d 720], and by the case of Johnsons Warehouses, Inc. vs. Yangtze Trading Corp., the case out of the Southern District of New York, reported at [D.C.], 100 F. Supp. 107.

"The testimony here is that the plaintiff, an Army officer, on receiving orders to leave the country, left his goods in storage with the proper officers of the United States Army. It is undisputed that a representative of the Army called at the office of the defendants and was shown building No. 437 South Second Street, Harrisburg. The testimony is, as I recall it, of that witness, Mr. Williams, that various types of storage had been made. I think he referred to one as transit storage.

"The warehouse receipt which was given on the deposit of these goods, is explicit and categorical in that it refers to 437 South Second Street, Harrisburg. It has been admitted that 437 South Second Street is entirely separate and distinct from 429 South Second Street, that there is no open communication between the buildings; that to get from 437 to 429 one would have to come out on Second Street and then enter 429 from its own front door.

"The opportunity was given the defendant to produce the representatives from the Army, allegedly from the Philadelphia Office, who later called at the warehouse, but the Court was informed that the gentleman who made that visit is now dead, that his superior is living but was not produced. I feel, therefore, that there is no competent evidence before the Court to show any ratification by the plaintiff or any authorized representative to the storage of the plaintiff's goods in 429 South Second Street rather than in 437 South Second Street, that being a definite building. It was a storage facility owned by the defendants and so indicated on their storage receipt.

"Under the circumstances I feel that I must sustain the objection of the plaintiff.

"Now, gentlemen, that leaves only a matter of value. Can you agree on that or do I have to submit that to the jury?"

It was agreed by counsel for plaintiff and defendants that the jury should be directed to return a verdict in favor of the plaintiff in the sum of $14,608. This was accordingly done.

Motion for Judgment N.O.V.

The motion assigned eight reasons which are being classified and will be considered in two different categories. Category 1 covers Reasons Nos. 1, 3, 5, and 7, as follows:

"1. There was no substantial evidence that the fire in defendants' warehouse with consequent destruction of plaintiff's goods was caused by defendants' negligence."

"3. The evidence was insufficient to warrant a finding that the defendants were properly chargeable with negligence as the proximate cause of plaintiff's loss."

"5. The evidence was insufficient to warrant a finding that the defendants were chargeable with any fault causing plaintiff's loss by violation of any building or fire code."

"7. The evidence requires a finding as a matter of law that the plaintiff's loss was caused without the fault or negligence of the defendants."

These reasons all deal generally with the question of negligence of the defendants as forming the basis of plaintiff's claim.

Defendants argued that the evidence disclosed their storage facilities extended from 429 to 445 South Second Street and comprised five buildings; that they were attached to one another and formed a reversed "C" in relation to South Second Street; that there was never any instruction, written or oral, from Carlisle Barracks that required plaintiff's goods

to be stored in a fireproof or fire retardant warehouse or in the specific building called variously 437, 437–445, or No. 1; that the inspector was shown space in No. 1 building because there was available space for storage at that time but that it was not available on the day the goods were received.

The evidence was clear and undisputed that the inspectors were shown only one building; that it was completely fireproof; that it was approved by the inspectors who left with the definite impression that that is where the goods would be placed. They were not placed there but on the contrary were placed in No. 429, a building with no fire protection. Building No. 429 was destroyed by fire as were the plaintiff's goods. Defendant, Weaver Warehouses, Inc., clearly violated the terms of its agreement thus bringing in effect the rule of absolute liability and the question of negligence is of no consequence.

93 C.J.S. Warehousemen & Safe Depositaries § 35, page 453, states the rule as follows:

"Where a warehouseman agrees to store goods in a particular place and complies with his contract, he is not liable for loss or damage in the absence of negligence; but where he agrees to store goods in a particular place, and stores them in a different place, he breaches his contract of bailment, takes the risk of loss or injury to the goods while stored in such different place, and must respond in damages irrespective of his negligence."

56 Am.Jur., Warehouses, §§ 154 and 156, state the rule as follows:

"§ 154. Violation of Express Agreement.—The general rule is that if a warehouseman agrees to store the property in a specified place, he must comply with such contract of storage, and if he stores the goods in a different place without notice to and consent of the depositor or owner of the goods, *it is at his own risk*, so that if the goods are injured or destroyed, *the warehouseman is liable, notwithstanding that no act of negligence on his part contributed thereto*, at least if the loss would not have occurred had the property been stored or kept in the place agreed upon. The rule is particularly applicable where the change of the place of storage subjects the goods to a greater risk than contemplated by the contract of the parties. * * *" (Emphasis supplied.)

"§ 156. Excuses for or Waiver of Violation. The fact that a warehouseman who has contracted to store the goods at a specified place is compelled to store the property in another place by the force of circumstances, such as termination of the lease, or injury to the building where the goods are first stored, does not necessarily absolve the warehouseman from liability. It has also been held that a custom among warehousemen in a certain locality, that when goods were placed in a warehouse other than the particular house to which they were consigned, the property would be permitted to remain in the house to which it was improperly sent, would not relieve the warehouseman from liability for loss of the goods, caused by their storage in a building less secure than the one contemplated. Moreover, although there is authority to the effect that liability of the warehouseman may be precluded by acquiescence in or ratification of the removal of the property to or storage in a place other than that agreed upon, mere knowledge on the part of the depositor of the improper place of storage has been held not to constitute a waiver of the contractual provision."

12 A.L.R. 1322 states the rule as follows:

"The weight of authority appears to support the rule that if the bailor, without authority, deviates from the contract as to the place of storage or keeping of the property, and a loss occurs which would not have occur-

red had the property been stored or kept in the place agreed upon, the bailee is liable, even though he is not negligent."

Defendants answer that while it is true plaintiff's inspectors were only shown No. 437 because at that time there was available space in that building, when the goods were received for storage there was no available space at that specific location. It is difficult to imagine a more naive excuse. It is no excuse at all.

A strikingly similar case is Barrett v. Freed, Municipal Court of Appeals for the District of Columbia, 1944, 35 A.2d 180, 181. Goods were received for storage, a receipt was issued indicating storage at a particular address, the goods were later destroyed by fire at a different location. The Court said:

" * * * One storing goods has a right to know where the goods shall be stored. Especially is this true where the warehouseman does not assume responsibility for loss by fire (as in the instant case). The location and type of building affect the risk which the owner assumes. * * The relationship between the parties was that of bailor and bailee. The contract of bailment called for storage at a particular place and the bailee breached his contract by removing the goods to another place. It is well established that if a bailee without authority deviates from the contract as to the place of storage and a loss occurs, which would not have occurred had the property been kept at the agreed place, the bailee is liable for such loss, even though he is not negligent.

"A leading English case on this question is Lilley v. Doubleday, L.R. 7 Q.B. Div. 510, where goods contracted to be stored at one place were moved by the bailee to another and destroyed by fire. Holding the bailee liable, the court said: 'The defendant was entrusted with the goods for a particular purpose and to keep them in a particular place. He took them to another, and must be responsible for what took place there. The only exception I see to this general rule is where the destruction of the goods must take place as inevitably at one place as at the other. If a bailee elects to deal with the property entrusted to him in a way not authorized by the bailor, he takes upon himself the risks of so doing, except where the risk is independent of his acts and inherent in the property itself.'

"The rule laid down above has been generally accepted by the American authorities, and we hold that when Barrett, without authority from or notice to the owner of the goods removed them from the place of storage specified in the warehouse receipt, he breached his contract of bailment and assumed the risk of the destruction of the property. * * * "

See also Johnsons Warehouses, Inc. v. Yangtze Trading Corp., D.C.S.D.N.Y. 1951, 100 F.Supp. 107.

Category 2 covers Reasons Nos. 2, 4, 6, and 8, as follows:

"2. There was no substantial evidence that the defendants did not care for plaintiff's goods in accordance with their trust as warehousemen."

"4. The evidence was insufficient to warrant a finding that the defendants failed to exercise the reasonable care of ordinarily prudent warehousemen or were otherwise at fault."

"6. The evidence was insufficient to charge the defendants with breach of contract for failure to store plaintiff's goods in a designated building or for any other reason."

"8. The evidence requires a finding as a matter of law that the plaintiff's loss was not caused by failure of defendants to store in an agreed place under the contract."

These reasons call for no further comment. By storing plaintiff's goods as it

did, defendant, Weaver Warehouses, Inc., breached its trust as a warehouseman and became liable under the theory of absolute liability notwithstanding that no act of negligence on its part contributed to the loss. The question of negligence is simply not in this case.

Defendants argue that while the warehouse receipt here contained a description of a warehouse location which appears definite on its face, it became indefinite when related to the facilities described in that it covered only a small portion thereof as brought out in plaintiff's case, therefore defendants should be allowed to introduce evidence explaining the latent ambiguity in description. The Court felt otherwise and refused defendants the right to introduce parol evidence that the goods could be stored at a place other than at No. 437. I adhere to that ruling.

The proposition posed by defendants only tells a part of the story. Under the undisputed testimony of plaintiff's witnesses there is no possibility of an ambiguity in the terms of the receipt. There was a building at No. 437 South Second Street, and that address is a specific street address in the City of Harrisburg. It was the only storage facility shown plaintiff's inspectors. It may well be that No. 437 is the hub of a group of buildings and that mail addressed to defendants would be delivered there. The fact still remains that that number is the location of a fireproof storage facility in which plaintiff's inspectors were led to believe plaintiff's goods would be stored. Under the facts of this case there certainly was no latent ambiguity in the wording of the receipt. There is therefore no point in considering the authorities on the question of the right to introduce parol evidence to explain such nonexistent latent ambiguity.

Alternative Motion for a New Trial

Defendants assigned fourteen reasons in support of this phase of the motion. Reasons Nos. 1 to 13 inclusive, contain the customary pro forma grounds, insufficiency of evidence to support the directed verdict, error of the Court in refusing to permit defendants' witnesses to testify relating to circumstances surrounding the issuance of the receipt, as to defendants' relationship with plaintiff's agent and United States Government concerning matters of storage, and further errors in relation to the rejection of testimony.

The evidence introduced by the plaintiff as above set forth was overwhelming and uncontradicted. The reasons assigned are all concerned with attempts to vary, explain or contradict the plain, concise, unambiguous language of the contract between the parties and certainly call for no resort to the parol evidence rule.

As to the amount of the verdict, the testimony speaks for itself. At the conclusion of the case there appears the following colloquy (Transcript of Trial Record, page 286):

"Mr. Wickersham: In this case, Your Honor, the testimony is that the amount is $14,608. There is a matter of interest for three years, ten months, and five days, which is equivalent to $3,371.99, which makes a total of $17,979.99. Now, Mr. Young has very properly raised this issue. If you wish to agree with us, Mr. Young, to let the jury return an award of $14,608, we will waive the interest which is more than equivalent to the difference of figures testified to.

"Mr. Young: I will agree.

"The Court: You agree with that?

"Mr. Young: Yes.

"The Court: You have got yourself technically on the record."

Finally, in Reason No. 14 defendants claim that the Court erred in failing to apply the limitation of value provisions of the warehouse receipt when directing the jury to return a verdict for the plaintiff.

The limitation of liability clause in the receipt is as follows:

"7 The above named Depositor declares that the value of any article, piece or package including the contents thereof, packed, handled, carted or stored in this lot, or later received for the account of same Depositor, does not exceed the sum of Thirty Cents (30¢) per lb., upon which valuation the rate is based, and the liability of the Company for any causes which would make it liable in case of loss or damage, while goods are in its possession, shall not exceed the sum so declared unless the owner or representative fixes a greater value and agrees to pay an additional charge of 25 cents per One Hundred Dollars ($100.00), per month thereon."

This matter was well covered in Barrett v. Freed, supra, as follows:

" * * * Can Barrett, notwithstanding his unauthorized removal of the goods, rely on a condition of his receipt limiting his liability?
* * *.

\* \* \* \* \* \*

" * * * Having agreed to keep the property at a specified place and having breached his contract in that respect, he cannot fall back upon another condition of his contract relieving him from liability.

"Appellant further relies upon a condition of the warehouse receipt limiting his liability to $50 for each package and the contents thereof, and complains that a larger sum was allowed for a cedar chest and its contents. For the same reason that appellant cannot rely upon the condition of no liability on account of fire he cannot rely upon the condition limiting the amount of his liability. *One cannot deliberately breach a provision of a contract and rely upon another provision of the contract in an action against him for such breach.* In Fidelity Storage Co. v. Kingsbury, 65 App.D.C. 69, 79 F.2d 705, 706, speaking of a similar limitation in a warehouse receipt, the court said: 'It is well settled that a bailee may limit his liability for goods deposited with him, except for gross negligence, willful act or fraud.' (Emphasis supplied.)

"The removal of the goods from the designated place of storage was a willful act on the part of Barrett. * * * *"

In the instant case, the storage of plaintiff's goods in a place other than that designated in the warehouse receipt was a willful act on the part of the defendants, and having deliberately breached a most vital provision of the contract, they cannot now rely upon another provision of the contract to mitigate their responsibility to plaintiff.

Defendants' motion for judgment notwithstanding the verdict or in the alternative for a new trial will be denied.

