OPINION OF THE COURT
Gabrielli, J.
At issue on this appeal is whether a warehouse which provides no adequate explanation for its failure to return stored property upon a proper demand is entitled to the benefit of a contractual limitation upon its liability. For the reasons discussed below, we conclude that proof of delivery of the stored property to the warehouse and its failure to return that property upon proper demand suffices to establish a prima facie case of conversion and thereby renders inapplicable the liability-limiting provision, unless the warehouse comes forward with evidence sufficient to prove that its failure to return the property is not the result of its conversion of that property to its own use. If the warehouse does proffer such evidence and is able to persuade the trier of facts of the truth of its explanation, then the limitation of liability will be given effect and the bailor will be required to prove the *661 warehouse to be at fault if it is to recover even those limited damages allowed by the provision.
The facts relevant to this appeal are undisputed and may be simply stated. In the autumn of 1974, plaintiff, an international metals trader, delivered three separate lots of an industrial metal called indium to defendant commercial warehouse for safekeeping. The parties have stipulated that the three lots of indium, which had an aggregate weight of some 845 pounds, were worth $100,000. When the metal was delivered to defendant, it supplied plaintiff with warehouse receipts for each lot. Printed on the back of each receipt were the terms and conditions of the bailment, as proposed by defendant. Section 11 of those terms and conditions provided as follows: "Limitation of Liability — Sec 11. The Liability of the warehouseman as to all articles and items listed on the face of this warehouse receipt is limited to the actual value of each article and item, but the total liability of the warehouseman shall not exceed in any event for damage to any or all the items or articles listed on this warehouse receipt the sum of fifty ($50.00) dollars; provided, however, that such liability may, on written request of the bailor at the time of signing this warehouse receipt or within twenty (20) days after receipt of this warehouse receipt, be increased on part or all of the articles and items hereunder, in which event, increased rates shall be charged based upon such increased valuation, but the warehousemen’s maximum liability shall in no event exceed the actual value of any or all of the articles and items in question. In no case shall the liability be extended to include any loss of profit”.[1] Plaintiff did not request any increase in defendant’s contractual liability, nor did it inform defendant of the value of the metal.
For almost two years, defendant billed plaintiff for storage of each of the three lots by means of monthly invoices that specifically identified the stored metal, and plaintiff duly paid each invoice. Finally, in May of 1976, plaintiff requested the return of one of the three lots of indium. At that point defendant for the first time informed plaintiff that it was unable to locate any of the indium. Plaintiff then commenced this action in conversion, seeking to recover the full value of the indium. In response, defendant contended that the metal *662 had been stolen through no fault of defendant’s and that, at any rate, section 11 of the terms printed on each warehouse receipt limited plaintiffs potential recovery to a maximum of $50 per lot of indium.
Special Term granted summary judgment to plaintiff for the full value of the indium. The court found that plaintiff had made out a prima facie case of conversion by proffering undisputed proof that the indium had been delivered to defendant and that defendant had failed to return it upon a proper demand. As to defendant’s contention that the metal had been stolen, the court concluded that this allegation was completely speculative and that defendant had failed to raise any question of fact sufficient to warrant a trial on the issue. Finally, Special Term held that the contractual limitation upon defendant’s liability was inapplicable to an action in conversion. The Appellate Division affirmed the judgment in favor of plaintiff and we granted defendant leave to appeal to this court. We now affirm the order appealed from.
Absent an agreement to the contrary, a warehouse is not an insurer of goods and may not be held liable for any injury to or loss of stored property not due to some fault upon its part (Uniform Commercial Code, § 7-204, subd [1]). As a bailee, however, a warehouse is required both to exercise reasonable care so as to prevent loss of or damage to the property (Buffalo Grain Co. v Sowerby, 195 NY 355) and, a fortiori, to refrain from itself converting materials left in its care (see Prosser, Torts [4th ed], § 15). If a warehouse does not convert the goods to its own use and does exercise reasonable care, it may not be held liable for any loss of or damage to the property unless it specifically agrees to accept a higher burden. If, however, the property is lost or damaged as a result of negligence upon the part of the warehouse, it will be liable in negligence. Similarly, should a warehouse actually convert stored property to its own use, it will be liable in conversion. Hence, a warehouse which fails to redeliver goods to the person entitled to their return upon a proper demand, may be liable for either negligence or conversion, depending upon the circumstances (see, generally, White & Summers, Uniform Commercial Code [2d ed], § 20-3).
A warehouse unable to return bailed property either because it has lost the property as a result of its negligence or because it has converted the property will be liable for the full value of the goods at the time of the loss or conversion *663 (Procter & Gamble Distr. Co. v Lawrence Amer. Field Warehousing Corp., 16 NY2d 344; 1 Harper and James, Torts, § 2.36), unless the parties have agreed to limit the warehouse’s potential liability. It has long been the law in this State that a warehouse, like a common carrier, may limit its liability for loss of or damage to stored goods even if the injury or loss is the result of the warehouse’s negligence, so long as it provides the bailor with an opportunity to increase that potential liability by payment of a higher storage fee (compare Klar v H. & M. Parcel Room, 270 App Div 538, 541, affd without opn 296 NY 1044, with Rapp v Washington Stor. Warehouse & Van Co., 75 Misc 16; see Uniform Commercial Code, § 7-204, NY Anns; see, also, Magnin v Dinsmore, 56 NY 168; Reichman v Compagnie Generale Transatlantique, 290 NY 344). If the warehouse converts the goods, however, strong policy considerations bar enforcement of any such limitation upon its liability (see Magnin v Dinsmore, 70 NY 410, 416; Reichman v Compagnie Generale Transatlantique, supra, p 352). This rule, which has now been codified in subdivision (2) of section 7-204 of the Uniform Commercial Code,[2] is premised on the distinction between an intentional and an unintentional tort. Although public policy will in many situations countenance voluntary prior limitations upon that liability which the law would otherwise impose upon one who acts carelessly (compare Ciofalo v Vic Tanney Gyms, 10 NY2d 294, with Gross v Sweet, 49 NY2d 102; but see General Obligations Law, §§ 5-321, 5-322, 5-323, 5-325, 5-326), such prior limitations may not properly be applied so as to diminish one’s liability for injuries resulting from an affirmative and intentional act of misconduct (see, generally, Restatement, Torts 2d, § 500; Restatement, Contracts 2d, Tent Draft No. 12, § 337), such as a conversion. Any other rule would encourage wrongdoing by allowing the converter to retain the difference between the value of the converted property and the limited amount of liability provided in the agreement of storage. That result would be absurd. To avoid such an anomaly, the law provides that when a warehouse converts bailed property, it thereby ceases to function as a warehouse and thus loses its entitlement to the protections afforded by the agreement of storage (see Magnin v Dinsmore, 70 NY 410, 417-418, supra). In short, *664 although the merely careless bailee remains a bailee and is entitled to whatever limitations of liability the bailor has agreed to, the converter forsakes his status as bailee completely and accordingly forfeits the protections of such limitations. Hence, in the instant case, whether defendant is entitled to the benefit of the liability-limiting provision of the warehouse receipt turns upon whether plaintiff has proven conversion or merely negligence.
Plaintiff has proffered uncontroverted proof of delivery of the indium to defendant, of a proper demand for its return, and of defendant’s failure to honor that demand. Defendant has failed to make a sufficient showing in support of its suggested explanation of the loss to defeat plaintiff’s motion for summary judgment. Its unsupported claim that the metal was stolen does not suffice to raise any issue of fact on this point.[3] Upon this record, it is beyond cavil that plaintiff would be entitled to judgment had it elected to sue defendant in negligence (see Golden v Romer, 20 Hun 438; Dalton v Hamilton Hotel Operating Co., 242 NY 481, 488-489; Stewart v Stone, 127 NY 500, 506; PJI 4:93, at p 1090; 1 Harper and James, Torts, § 2.27, at p 172; McCormick, Evidence [2d ed], *665 § 343, at pp 808-809). We now hold that such a record also suffices to sustain plaintiffs action in conversion, thereby rendering inapplicable the contractual limitation upon defendant’s liability.[4]
 The rule requiring a warehouse to come forward with an explanation for its failure to return bailed goods or be cast in damages in negligence is based upon practical necessity. As is noted above, a warehouse may only be held liable for loss of or damage to bailed goods if the loss or damage is due to the negligence of the warehouse or if the warehouse has converted the property. Hence, in order to recover damages for lost or damaged goods, a bailor must prove either that the warehouse was negligent or that it converted the goods. Since bailed property is in the possession of and under the sole control of the warehouse at the time of injury or loss, however, it is the warehouse which is in the best, if not the only, position to explain the loss of or damage to the property. Indeed, such information normally will be exclusively in the possession of the warehouse and will not be readily accessible to the bailor. Because of this, the law properly refuses to allow a warehouse, which has undertaken for a fee to securely store goods belonging to another, to avoid liability by simply pleading ignorance of the fate of the stored merchandise. To allow the warehouse to so easily escape its responsibilities would be to place the bailor in an untenable position and would serve to encourage both dishonesty and carelessness. Clearly, the temptation to convert stored property would be significantly increased could the warehouse then avoid all civil liability by simply denying all knowledge of the circumstances of the loss and placing upon the bailor the well nigh impossible burden of determining and proving what happened to his property while it was hidden from sight in the depths of the defendant’s warehouse. Similarly, such a rule would reward those warehouses with the least efficient inventory control procedures, since they would be most able to honestly plead ignorance of the fate of goods entrusted to their care.
*666 To prevent such absurd results, the law has long placed upon the warehouse the burden of advancing an adequate explanation of the reasons for its failure to properly return stored property (see PJI 4:93, at p 1090; Richardson, Evidence [10th ed], § 109). This does not mean that the warehouse is required to prove that it acted properly, nor does this doctrine shift the burden of proof to the warehouse. Rather, the warehouse must come forward and explain the circumstances of the loss of or damage to the bailed goods upon pain of being held liable for negligence. If the warehouse does provide an explanation for the loss or damage, the plaintiff then must prove that the warehouse was at fault if he is to recover (see Textile Overseas Corp. v Riveredge Warehouse Corp., 275 App Div 236). A few illustrations of this principle may be of some assistance. Where the warehouse simply refuses to return bailed property upon a legitimate demand and does not advance any explanation for that refusal, the plaintiff will be entitled to recover without more. Similarly, where the warehouse does suggest an explanation for the loss but is unable to proffer sufficient evidentiary support for that explanation to create a question of fact, as in this case, the plaintiff will be entitled to recover without more. Where, however, the warehouse proffers sufficient evidence supporting its explanation to create a question of fact, the jury must be instructed that if it believes that explanation, the plaintiff must be denied any recovery unless he has proven that the warehouse was at fault (Uniform Commercial Code, § 7-403, subd [1], par [b]). In other words, if the jury is persuaded that the goods were accidentally mislaid or destroyed in a fire or accident or stolen by a third party, the plaintiff cannot recover unless he has proven that the loss or the fire or the accident or the theft were the proximate result of either a purposive act or a negligent commission or omission by the warehouse.
Although it has long been settled that this is the rule in an action in negligence, there has been considerable inconsistency and uncertainty as to the application of this principle to an action in conversion. Thus, although we have on occasion declared that a bailor establishes a prima facie case of conversion by simply proving delivery to the bailee and an unexplained failure to return the stored goods upon demand (Procter & Gamble Distr. Co. v Lawrence Amer. Field Warehousing Corp., 16 NY2d 344, supra; see Claflin v Meyer, 75 NY 260, 263; Bank of Oswego v Doyle, 91 NY 32, 41; accord 1 Harper *667 and James, Torts, § 2.27), we have at other times indicated that something more is needed to maintain an action in conversion and that a plaintiff will be required to provide positive evidence of an intentional act by the warehouse inconsistent with the plaintiff’s interest in the property (Reichman v Compagnie Generale Transatlantique, 290 NY 344, 352, supra; see, also, Wamsley v Atlas S. S. Co., 168 NY 533; Central School Dist. No. 3 of Towns of Amherst, Cheektowaga & Clarence v Insurance Co. of North Amer., 43 NY2d 878). We deem it unnecessary to engage in an extended discussion of each of the precedents in this area, for they appear essentially irreconcilable. Rather, we have decided to take this opportunity to re-examine the matter and to determine the most appropriate resolution of this controversy.
We now conclude that there exists no sound reason to apply a different rule to the two types of action where, as here, the bailee comes forward with insufficient proof of its explanation for the loss of the bailed goods. The same policy considerations which prevent a warehouse from avoiding liability in negligence by a declaration of ignorance appear equally applicable to an action in conversion. Indeed, as a practical matter, a bailor will be even less able to prove conversion by a warehouse than he would negligence, since a warehouseman who actually converts stored property will generally strive mightily to prevent knowledge of his malfeasance from coming to light. The possibility of fraud is obvious, for a dishonest warehouseman might well be encouraged to convert bailed property if he could then obtain the benefit of a contractual limitation of liability by the simple expedient of professing ignorance as to the fate of the goods. The rule requiring a warehouse to explain the loss of or damage to the goods lest it be held liable would be severely undermined could a warehouse avoid the bulk of potential liability in such a case by means of a contractual provision.
We note, moreover, that the requirement that a warehouse provide an explanation for loss of property entrusted to it is certainly not overly harsh, nor does it impose a heavy burden upon the warehouse. The warehouse must only offer proof of what actually happened to the goods and need not show that it was free from fault, for once the warehouse makes the initial required showing, the burden of proving the warehouse to be at fault will fall squarely upon the plaintiff. No greater duty of care is created by this rule, nor does it establish any *668 sort of strict liability. Certainly a warehouse may reasonably be required to keep track of goods entrusted to it and to supply an accurate explanation of any loss to the bailor.
Finally, where a warehouse does not explain the cause of the loss, it would appear as reasonable to assume that this profession of ignorance is due to the fact that the warehouse has converted the goods as to presume that it is due to the fact that the warehouse has been negligent. Indeed, one who commits an intentional wrong is more likely to attempt to cover his tracks than one who has been at most negligent, especially in light of the disparity in potential liability created by the insertion of a limitation of liability clause. For all these reasons, we conclude that plaintiff was entitled to summary judgment in its action in conversion. Quite simply, plaintiff proved delivery of the indium to defendant warehouse and defendant’s subsequent failure to return the metal, whereas defendant has not come forward with adequate evidentiary proof in admissible form to support its suggested explanation of that failure. That being so, the limitation on liability was inapplicable, and plaintiff was entitled to recover the actual value of the missing indium.
Accordingly, the order appealed from should be affirmed, with costs.

. In light of our disposition of the main issue presented by this case we need not and accordingly do not determine whether this limitation applies to loss of bailed property as well as damage to that property.

. We find no merit to defendant’s suggestion that the term "conversion to his own use” as used in subdivision (2) of section 7-204 means something more than a simple conversion (see Lipman v Petersen, 223 Kan 483).

. The explanation proffered by the warehouse in such a case must be supported by sufficient evidence and cannot be merely the product of speculation and conjecture. "The explanation must show with reasonable certainty how the loss occurred, as, by theft or fire * * * It is not enough to show that defendant-bailee used reasonable care in its system of custody if mysterious disappearance is the only 'explanation’ given” (PJI 4:93, at pp 1090-1091; see Dalton v Hamilton Hotel Operating Co., 242 NY 481, 488-489). In the instant case, defendant offered proof of the following facts in support of its claim that the indium had been stolen: "(1) the storage of the indium in three different locations in two different buildings, and the absence of any indication in [defendant] Municipal’s records that the indium was moved, negate the possibility of misdelivery; (2) the storage of the indium without special precautions, because [plaintiff] ICC failed to advise Municipal of its true value, supports the likelihood of theft; (3) the form of the indium (small bars) would have facilitated removal without detection; (4) a recently discharged employee was experienced in 'weighing and sampling’ and thus presumably was aware of the value of indium; (5) there was a series of alarms, any one of which could have been caused by a theft; (6) Municipal promptly reported the loss to the police; and (7) ICC reported the loss to its insurers as a theft and continued to employ Municipal’s services, thus negating any suspicion that Municipal had misappropriated the indium or had been grossly negligent in its care.” Viewed most favorably to defendant, this evidence would indicate at most that theft by a third party was one possible explanation for the defendant’s failure to redeliver the indium to plaintiff. This is simply insufficient, since the warehouse is required to show not merely what might conceivably have happened to the goods, but rather what actually happened to the goods. Defendant proved only that theft was possible, and presented no proof of an actual theft. Hence, the proffered explanation was inadequate as a matter of law.

. We emphasize at this point that we do not suggest by our holding in this case that proof of negligence will support a recovery in conversion. Rather, our holding is limited to those situations in which the warehouse fails to provide an adequate explanation for its failure to return stored goods. If the warehouse comes forward with an explanation supported by evidentiary proof in admissible form, the plaintiff will then be required to prove that the loss was due to either negligence or conversion, depending on the circumstances. For plaintiff to recover in conversion after the warehouse has established a prima facie explanation for its failure to deliver, the trier of facts must find all the traditional elements of conversion.