PHILIPP BROTHERS METAL CORPO-
RATION, Plaintiff-Appellee,

v.

S.S. "RIO IGUAZU", her engines,
boilers, etc.,

v.

EMPRESA LINEAS MARITIMAS AR-
GENTINAS (ARGENTINE LINES),
Defendant-Appellant-Appellee,

and

Pittston Stevedoring Corp.,
Defendant-Appellee-Appellant.

Nos. 1338-9, Dockets 81-7016, 81-7018.

United States Court of Appeals,
Second Circuit.

Argued June 1, 1981.

Decided Aug. 7, 1981.

Bigham, Englar, Jones & Houston, New York City, for plaintiff-appellee.

Kirlin, Campbell & Keating, New York City, for defendant-appellant-appellee.

Donovan, Maloof, Walsh & Kennedy, New York City, for appellee-appellant.

Before LUMBARD and MESKILL, Circuit Judges, and LASKER,* District Judge.

PER CURIAM:

Philipp Brothers Metal Corporation sues for non-delivery of a portion of its cargo of 233 bundles of hollow tin bars which were shipped from Buenos Aires, Argentina to New York aboard the S.S. "Rio Iguazu." The defendants are Empresa Lineas Maritimas Argentinas (Argentine Lines), which issued the bill of lading, and Pittston Stevedoring Corp., which, pursuant to its contract with Empresa, discharged the cargo after its arrival on November 2, 1976.

Although it received arrival notices, Philipp Brothers, consignee of the cargo, did not pick up the cargo during the "free time" allowed it by the stevedore. Instead, it arranged for the bars to be counted and weighed on the pier on November 17, 1976. The weigher found all 233 bundles present. Philipp Brothers subsequently sold the cargo, taking up the goods in three installments. When the final installment was picked up on January 19, 1977, five bundles were missing.

After trial without a jury, the district court 498 F.Supp. 645 concluded that both Empresa and Pittston were jointly and severally liable for the lost cargo.[1] The district judge found that at the time Philipp Brothers caused the cargo to be counted and weighed, Empresa's obligations under the contract of carriage and the United States Carriage of Goods By Sea Act, 46 U.S.C. § 1300 *et seq.* ("COGSA"), terminated and that thereafter, Pittston, in whose possession Philipp Brothers left the cargo, became their common law bailee. Since 233 bundles were delivered to Pittston and only 228 picked up by Philipp Brothers, Pittston was held responsible for the shortage. Although the district judge found that Empresa was not liable either for breach of its contract of carriage or under COGSA, it nevertheless held it "vicariously" liable for the loss by its stevedore, Pittston. The District Judge recognized that no decision of this court had determined whether a carrier could be held liable, after delivery, for the negligence of its stevedore. He concluded, however, that a rule holding the carrier liable under the circumstances of this case would be "consonant with the policies of modern maritime law":

> "[T]he carrier is . . . in a better position than the owner of the goods to assess the reliability of its stevedore and to protect itself by contract (as well as by its mutually beneficial continuing business relationship with the stevedore) and by insurance against cargo losses taking place when the goods are in the stevedore's possession. Empresa the carrier in this case, calls regularly at the Port of New York, and regularly employs Pittston as its stevedoring and warehousing agent under a long term contract. At least where these circumstances are present, the carrier should remain responsible to the owner for the negligence of its stevedore in the execution of the stevedore's duties as bailee, even after expiration of free time." (at 649–650).

---

* Hon. Morris E. Lasker of the United States District Court for the Southern District of New York, sitting by designation.

1. The missing cargo was found to be worth $10,013.33. Both defendants were also found to be liable for the charge of $910.15 Philipp Brothers paid to ascertain its loss. Pittston was also found to be entitled to its demurrage charges of $2,867.04.

Empresa and Pittston both appeal. Empresa argues, *inter alia*, that it cannot be liable for the loss of the cargo because the court found that it had discharged its duties under the bill of lading and under COGSA. Pittston contends that the claim against it is time-barred, that the evidence does not support a finding that its negligence caused the loss, and that recovery is limited by COGSA to $500. per bundle. Philipp Brothers answers that Pittston is liable as a bailee; that the limitations set by the bill of lading or by COGSA are inapplicable, and that Empresa is liable for the negligence of its agent and stevedore, Pittston.

## I. *Liability of Pittston*

■■■■ The points of error alleged by Pittston require little discussion. We agree with the district judge that Pittston became a common law bailee after delivery to Philipp Brothers had been completed at the time Philipp Brothers caused the cargo to be counted and weighed. At that point Pittston had the option of placing the cargo in an independent warehouse, and charging Philipp Brothers with the expense, or storing the goods itself, and thus becoming entitled to the warehouse costs. *See Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 807 n.5, 811–12 (2d Cir. 1971). Since Pittston's liability is premised on its position as a bailee, any time limit or limitation of liability contained in the bill of lading or COGSA are inapplicable. Moreover, the district court's finding that the loss of the cargo was due to Pittston's negligence is not clearly erroneous in view of the proof that Pittston received 233 bundles, that only 228 bundles were available to be picked up by Philipp Brothers, and that no one had had possession of the bundles in the interim. This evidence, heightened by Pittston's failure to explain the loss of five bundles renders Pittston liable both for negligence and

conversion. *I.C.C. Metals, Inc. v. Municipal Warehouse Company,* 50 N.Y.2d 657, 664–68, 431 N.Y.S.2d 372, 409 N.E.2d 849 (1980).

Accordingly, the holding that Pittston is liable for the loss of the cargo is affirmed.

## II. *Liability of Empresa*

■■■■ There is no basis on which to hold Empresa liable for the loss of the cargo. The district court found that Empresa had discharged its duties under COGSA and the bill of lading by delivering the complete cargo to Philipp Brothers. Philipp Brothers argues that Pittston was acting as Empresa's agent when it stored the cargo and that Empresa is therefore liable for the negligence of Pittston which caused the loss. However, as noted above, when Philipp Brothers, after taking possession of the goods to weigh and count them, decided to leave the goods with Pittston, a new bailor-bailee relationship was formed between Philipp Brothers and Pittston. As bailee, Pittston was acting neither on behalf of Empresa to fulfill Empresa's obligations (since those obligations had already been discharged), nor at Empresa's direction. The bailor-bailee relationship was created by Philipp Brothers' acts, not by Empresa's. Accordingly, Pittston was not acting as Empresa's agent when it stored the goods after delivery was made, and at the time the loss was found to have occurred.[2]

The district judge reasoned that it would be sound policy to hold Empresa liable for the negligence of its stevedore because it was Empresa who chose Pittston to act as its stevedore. It was his view that Empresa could protect itself by contract against such liability. It is true that up to the time when Philipp Brothers took delivery Empresa remained liable to it. *See David Crystal, Inc. v. Cunard Steam-Ship Co.,* 339 F.2d 295, 298 (2d Cir. 1964), *cert. denied,* 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965). However, when Philipp Brothers

2. This case does not present a situation in which delivery had not yet been made to the owner or consignee, *David Crystal, Inc. v. Cunard Steam-Ship Co.,* 339 F.2d 295 (2d Cir. 1964), *cert. denied,* 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965); *Caterpillar Overseas,* S.A. v. S.S. Expeditor, 318 F.2d 720 (2d Cir.), *cert. denied,* 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 272 (1963), nor in which the owner has not yet called for the delivered goods which remain in the carrier's possession, *The Italia,* 187 F. 113, 114 (2d Cir. 1911).

took delivery and on its own determined thereafter to leave its goods in Pittston's possession, a qualitative change occurred: thereafter as the district court itself recognized, Pittston was no longer liable either under the bill of lading or COGSA. We find no authority which would support the determination that any other kind of liability could exist under the circumstances.

Accordingly, the decision holding Empresa liable for the loss of the cargo is reversed.