Robert Owen LEHMAN, Plaintiff,

v.

Aki Eveline LEHMAN, Defendant.

No. 80 Civ. 4337 (JES).

United States District Court,
S.D. New York.

Aug. 16, 1984.

Erdheim, Shalleck & Frank, New York City, for defendant; Irving I. Erdheim, Isabelle C. Flaherty, New York City, of counsel.

Parcher & Herbert, P.C., New York City, for plaintiff; L. Peter Parcher, Vivienne Garfinkle, New York City, of counsel.

## OPINION & ORDER

SPRIZZO, District Judge:

Plaintiff, Robert Owen Lehman, commenced this diversity action against his

1. The items of art will be identified by number, in accordance with the list introduced by plaintiff as Exhibit 1.

2. In his original complaint, filed July 30, 1980, Mr. Lehman asserted only his conversion and replevin claims; he amended his complaint in July 1981 to add a bailment cause of action.

3. Mr. Lehman contends that, at the time of their separation, he permitted his wife to retain the artwork at the White House with the understanding that he owned it and could repossess it anytime he wished. Mrs. Lehman claims that, when they separated, her husband gave her all of the forty-three items that she or the children did not already own. The Court rejects, as incredible, her testimony that plaintiff gave her those items at that time.

former wife, Aki Eveline Lehman, to recover possession or, in the alternative, the value of forty-three objects of art that he claims to own.[1] His pleadings allege causes of action in replevin and conversion, and for breach of a bailment agreement.[2] The action was tried before this Court, and the parties filed post-trial memoranda. The Court heard oral argument on November 28, 1983; thereafter, the parties submitted additional correspondence. Having reviewed the submissions of both parties, the Court renders the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Mr. and Mrs. Lehman were married in April 1964. They physically separated in late 1971. At that time, the Lehmans were living in their London home (the "White House") with their two young children. At the time of the Lehman's separation, the items of art at issue in this proceeding were all in the White House.

2. When the parties separated, Mrs. Lehman retained the forty-three items of art in the White House.[3] Shortly thereafter, in February 1972, she and the children moved to a house in Paris, France (the "Paris House") and took the artwork with them.[4]

3. In October 1974, the Lehmans entered into a separation agreement which, *inter alia*, provided for alimony and support for Mrs. Lehman and set forth who was entitled to which items of art.[5] That

4. Mrs. Lehman suggests that plaintiff removed many of the art objects from the White House prior to her move to Paris. *See* Defendant's Response to Plaintiff's Interrogatory No. 3. That contention, however, is supported by no credible evidence; furthermore, it was totally rebutted by the testimony of Mr. Lehman and of mutual friends of the parties who visited Mrs. Lehman at the Paris House and observed most of the items there.

5. The separation agreement provided that five major items of art (the "Major Items") were the property of Mr. Lehman but would remain in the Paris House subject to his right to remove them at will and that the other tangible personal property in Mrs. Lehman's possession (including the remaining thirty-eight items) would belong to her. Exh. 2, art. 4. The Major Items

agreement, however, specifically stated that, in the event the Lehmans were not divorced by June 30, 1976, its terms would not take effect and the rights of the parties would revert to the status quo existing prior to the execution of the agreement.

4. Although Mr. Lehman commenced a divorce action in New York state court, a judgment of divorce was not obtained prior to June 30, 1976.[6] As a result, Mrs. Lehman became entitled to an independent determination of her alimony and support, and ownership of the artwork reverted to the status existing prior to the execution of the separation agreement.

5. From July 1976 until January 1980, the parties intermittently negotiated and litigated over the issues of alimony and support. On several occasions during this period, Mr. Lehman, either personally or through his attorneys, demanded that the artwork be returned to him. On each occasion, counsel mutually decided to wait to resolve issues concerning the artwork until after they settled the alimony and support issues.

*Ownership of the Artwork*

6. Each of the parties claims to own all forty-three items of art. Mr. Lehman contends that, with one exception, he acquired ownership of the items by either purchasing them himself or receiving them as gifts from his father.[7] Mrs. Lehman claims that she and/or her children acquired ownership of the items in a variety of ways—by purchasing them herself with her own or joint funds, by her husband's purchase of them with joint funds, and by gift from her husband or her father-in-law.

7. Mrs. Lehman's claim of ownership over all of the artwork is inconsistent with the position she took earlier in this litigation in responding to one of plaintiff's interrogatories—when she asserted ownership over only eight items.[8] It is also inconsistent with her conduct prior to the commencement of this litigation. First, between July 1976 and December 1979, Mr. Lehman or his attorneys made several requests that Mrs. Lehman return the artwork to her husband. At no time did she respond to those requests by contesting her husband's claim to the property and asserting instead that she was the proper owner. Second, when questioned in the state matrimonial proceeding regarding the artwork, she also did not claim to own all forty-three items.[9]

8. Since Mrs. Lehman's interrogatory response only asserted ownership of eight items, and in light of her previous failure to claim ownership over all of the artwork, the Court finds that plaintiff, Robert Lehman, is the exclusive owner of thirty-five of the forty-three items. In so finding, the Court primarily relies upon Mrs. Lehman's response to plaintiff's interrogatory; however, it also relies upon her overall lack of credibility in explaining how she came to own those thirty-five items.

9. The remaining eight items are those enumerated in Mrs. Lehman's interrogatory response: #2—Costa Rican stone figure; #3—Indian stone statue; #6—Byzantine tapestry Flemish; #7—Benin

were: #5—Della Robbia, "Madonna with Child"; #6—Byzantine tapestry Flemish; #27—Schiele, "Portrait of Edith"; and ##38 and 39—Gothic tryptics.

6. The judgment of divorce was rendered February 28, 1977. Exh. 3.

7. The exception is item #14, an Ashanti gold seat, which Mrs. Lehman purchased as a gift for him.

8. In her response, dated May 7, 1981, Mrs. Lehman asserted ownership only with respect to items ##2, 3, 6, 7, 12, (22, 23, or 24), 37, and 40. She now seeks to escape the implications of that answer by claiming that her response was limit-

ed to the eight items then in her possession, not all forty-three; however, the interrogatory question clearly sought a response as to all forty-three.

9. In January 1980, at the close of the support hearing, Mr. Lehman sought to enlarge the scope of the proceeding to include the dispute over the artwork, but the court did not permit him to do so. Mr. Lehman's attorney did, however, question Mrs. Lehman about whether she claimed to own the artwork because ownership of those assets was relevant in determining the amount of alimony and support she was entitled to. In the course of that questioning, she asserted ownership of only five of the forty-three items.

bronze cock; #12—Ashanti carved wood door; #37—one Shepard drawing[10]; #40 —model of steam engine; and either #22 or 23 or 24—cassone.[11]

10. The Court finds that plaintiff, Robert Lehman, is the exclusive owner of items ## 2, 6, 7, 12, 22, 23, and 24. In so finding, the Court specifically rejects the testimony of Mrs. Lehman as to how she came to own the artwork and accepts the testimony of plaintiff and his witness, Dr. George Szabo, curator of the Robert Lehman Art Collection at the Metropolitan Museum of Art.

■ 11. Items ## 3, 37, and 40 were purchased on Mr. and Mrs. Lehman's joint checking account.[12] The Court therefore finds that they are owned jointly by Mr. and Mrs. Lehman.

*Possession of the Property*

12. Mr. Lehman left the items in London, in his wife's possession, at the time of their separation. He did so for safekeeping and with the understanding that he owned the items and could repossess them on demand.

13. Mrs. Lehman took the items with her when she and the children moved to Paris in 1972.

14. At no time was any of the artwork returned to plaintiff.

15. Items ## 2, 3, 5, 6, 7, 12, 22, 23, 24, 37, 40, 41, and three of the twenty-two drawings comprised by item #37 were in Mrs. Lehman's possession when this action commenced.[13]

16. The Court is unable to find by a preponderance of the evidence that the remaining items were in defendant's possession in July 1980, when this action was commenced. The Court does, however, find that Mrs. Lehman has failed to explain adequately what happened to those items. Her testimony that they were somehow destroyed, lost, stolen, or are missing was incredible and supported by no corroborating evidence.[14]

10. Item #37 is a collection of twenty-two children's drawings. Mrs. Lehman claims that only one of those drawings was in her possession at the start of this action. The evidence, however, showed that three of the drawings were observed in the children's bedrooms as recently as 1978–1979. Based on that evidence, the Court finds that two additional drawings were also in defendant's possession when this action was commenced.

11. Items ## 22, 23, and 24 are cassone chests. Mrs. Lehman claims that only one of the three was in her possession at the commencement of this action; however, the Court finds that all three were. Two of the three cassones were observed in the Paris House as late as 1979–1980, and a third was in storage in a Paris warehouse.

12. At trial, Mrs. Lehman introduced the cancelled checks that were used to purchase items ## 3 and 40. Exhs. O, AA. She did not produce a check for item #37; however, the Court accepts her testimony that she purchased those drawings with joint funds for her children.

13. Defendant herself admitted in her May 7, 1981 interrogatory response that most of those items were in her possession. With respect to the items not encompassed within her response—two of the three cassones (## 22, 23 and 24), two additional children's drawings (#37), the Della Robbia (#5), and a model airplane (#41)—the Court concludes, by a preponder-

ance of the evidence, that those items were also in defendant's possession when this action was commenced. As noted above, *supra* nn. 10 & 11, the evidence showed that all three cassones and three children's drawings were in Mrs. Lehman's possession at the commencement of this action. Furthermore, the Della Robbia was observed in the Paris House as recently as 1979–1980, and the model airplane was in storage in a Paris warehouse.

14. At trial, Mrs. Lehman essentially testified that she had no idea what happened to those items. She suggested that many of them may have been destroyed when the roof of the Paris House partially collapsed in 1977 or 1978 or possibly were stolen or damaged during a series of repairs to the house. She also claimed to have placed some items in the custody of a friend, Jean Seberg, for safekeeping. The Court rejects those as adequate explanations. They do not, by any stretch of the imagination, establish what actually happened to the artwork. Mrs. Lehman never testified that she had personally observed any of the items in a damaged condition; she could not explain how or when specific items came to be destroyed; she did not testify that she informed her husband or her attorneys that any of the artwork was missing or destroyed. Furthermore, no other person testified as to the destruction or disappearance of the items; on the contrary, witnesses observed many items in the house between 1972 and 1980. Defendant's testimony about leaving

## CONCLUSIONS OF LAW

1. Plaintiff, Robert Lehman, is the exclusive owner of all of the items of art except ## 3, 37, and 40, which he owns jointly with the defendant.

2. When Mr. Lehman left the artwork in his wife's possession at the time of their separation, his wife became a bailee of the property. That bailment continued after the terms of the separation agreement became a nullity in 1976.

3. Plaintiff established his *prima facie* case for conversion by showing that he owned the artwork, that he placed the property in his wife's possession, and that she refused to return it upon demand.[15] *See I.C.C. Metals, Inc. v. Municipal Warehouse Co.*, 50 N.Y.2d 657, 664–66, 431 N.Y.S.2d 372, 376–78, 409 N.E.2d 849, 853–55 (1980); *Damast v. New Concepts in Jewelry Ltd.*, 86 A.D.2d 886, 886, 447 N.Y.S.2d 530, 531 (2d Dep't 1982); *see also* 23 N.Y. Jur.2d *Conversion* § 76, at 312 (1982).

4. Since Mrs. Lehman refused to return the property to the plaintiff, and since she failed to explain adequately what became of the missing items, she is liable as a converter with respect to all items not in her possession at the time this action was commenced.[16]

5. With respect to the jointly owned property (items ## 3, 37, and 40), plaintiff is entitled to one half the value of those items at the time of trial.[17]

6. With respect to all items that were in defendant's possession when this action was commenced (except the jointly owned items—## 3, 37, 40), plaintiff is entitled to a writ of replevin and possession of those items or, in the alternative, their value at the time of trial.[18]

7. With respect to the remaining items, plaintiff is entitled to recover their value at the time and place of conversion.[19]

8. The Court rejects defendant's affirmative defense that this action is barred by the statute of limitations.[20]

some items in Jean Seberg's possession is also inadequate as an explanation of what happened to the property because Mrs. Lehman did not identify the specific objects that she gave to Mrs. Seberg.

15. The parties differ as to exactly when Mrs. Lehman's act of conversion occurred. *See infra* note 19.

16. Under New York law, a plaintiff may recover on his *prima facie* case when the bailee fails to come forward with a satisfactory explanation of what happened to the property. *See I.C.C. Metals, Inc., supra,* 50 N.Y.2d at 664–66, 431 N.Y.S.2d at 376–78, 409 N.E.2d at 853–55; *Damast, supra,* 86 A.D.2d at 886, 447 N.Y.S.2d at 531. Since, in such a situation, the bailor need not prove the bailee's negligence, it is unnecessary for this Court to address Mrs. Lehman's affirmative defense of comparative negligence. The Court notes, however, that the evidence does not establish any negligence on the part of plaintiff.

17. Testimony at trial indicated that the value of item # 3 at that time was $1,800. There is no evidence, however, as to the value of items ## 37 and 40 at the time of trial. That issue will be referred to a Magistrate for determination.

18. At trial, witnesses testified that the value of those items was as follows: # 2—not more than $4,000; # 5—approximately $100,000; item # 6—approximately $60,000; # 7—not more than $2,000; # 12—$6,000; ## 22, 23, and 24— $25,000–$30,000 each. No value was given for item # 41.

19. In his post-trial papers, plaintiff acknowledged that the proper measure of damages in a conversion action is generally the value of the property at the time and place of conversion. Plaintiff's Post-Trial Brief at 27; *see* 23 N.Y. Jur.2d *Conversion* § 66, at 291–92. Following oral argument, however, Mr. Lehman's attorneys submitted letters to the Court seeking to establish that, where items of art have been converted, damages should be determined in accordance with their value at the time of trial. This Court has reviewed the authorities submitted by both parties on that issue and concludes that those cases do not establish that the Court should depart from the ordinary measure of damages for *conversion* simply because artwork is the property at issue.

Since there is no evidence in the record which would permit the Court to determine the value of the items when they were converted, the Court will refer that issue to a Magistrate. In connection with that determination, the Magistrate should, as a preliminary matter, determine when the conversion occurred—i.e., when Mrs. Lehman first refused to return the property.

20. Both parties agree that the applicable statute of limitations is three years. *See* N.Y. C.P.L.R. Law § 214 (McKinney 1972). This action was commenced July 30, 1980. Mrs. Lehman argues that plaintiff's cause of action accrued prior to July 30, 1977 and is therefore barred.

In a case such as this one, where the defendant lawfully acquired possession and has committed

**1528**

### CONCLUSION

In accordance with the foregoing findings of fact and conclusions of law, plaintiff is declared to be the exclusive owner of items ## 1, 2, 4–36, 38, 39, 41–43. He is entitled to recover damages from the defendant for conversion of items ## 1, 4, 8–11, 13–21, 25–36, 38, 39, 42, and 43. The determination of those damages will be referred to a Magistrate. The Court orders that defendant return items ## 2, 5, 6, 7, 12, 22, 23, 24, and 41 to the plaintiff. If a writ of replevin cannot be satisfied with respect to those items, plaintiff is entitled to their value at the time of trial.

Plaintiff and defendant are declared to be joint owners of items ## 3, 37, and 40. The parties and their attorneys are directed to confer regarding those items to resolve whether plaintiff or defendant is to have possession and sole ownership. The party not receiving possession and sole ownership is entitled to receive one half of the value of the item at the time of trial.

Pre-judgment interest is awarded in accordance with the applicable rate under New York law. Attorneys for the parties are directed to confer and submit a joint proposed order and judgment to this Court in accordance with this opinion.

It is SO ORDERED.

---

no overt act of conversion by an unlawful sale or disposition of the property, the statute of limitations does not commence to run until the possessor refuses a demand by the owner that he return the property. *See MacDonnell v. Buffalo Loan, Trust and Safe Deposit Co.,* 193 N.Y. 92, 101, 85 N.E. 801, 803 (1908); *Morales v. Klopsch,* 158 A.D. 824, 826–27, 143 N.Y.S. 922, 924 (1st Dep't 1913); 23 N.Y.Jur.2d *Conversion* § 62, at 281. In the present action, the first demand occurred on August 2, 1976. On that date, soon after the terms of the separation agreement became a nullity, Mr. Lehman's attorney wrote to defendant's attorney to demand the return of the artwork. Exh. 4. Plaintiff testified, however, that shortly thereafter he in effect withdrew that demand and decided to permit Mrs. Lehman to retain possession until they were able to resolve their differences regarding alimony and support. Trial Transcript at 70; *see* Plaintiff's Answers to Defendant's Interrogatories para. 4. His August 2, 1976 demand, therefore, was never refused, so the statute of limitations did not commence running at that time. *Agawam Trading Corp. v. Mayer Malbin Co.,* 37 A.D.2d 946, 946, 325 N.Y.S.2d 757, 757–58 (1st Dep't 1971).

Plaintiff suggests that his cause of action accrued no earlier than September 1977. Transcript of Oral Argument at 26–28. That appears to be when settlement negotiations broke down between the parties on the issues of alimony and support. Prior to September 1977, attorneys for the parties had agreed that Mrs. Lehman would retain possession of the artwork pending settlement of those issues. Alternatively, plaintiff claims that the statute of limitations began running in either March 1978 or January or February of 1980. *Id.* at 28. The Court agrees with plaintiff that his cause of action accrued no earlier than September 1977; therefore, this action is not time-barred. Prior to that time, there was no actual refusal by the defendant to return plaintiff's property, and the attorneys for the parties had agreed that she retain possession pending a resolution of other issues. The Court, however, does not resolve whether September 1977, March 1978, January or February of 1980, or some other date was the exact date upon which the conversion occurred. That issue will be resolved by the Magistrate in connection with his determination of damages. *See supra* note 18.