OPINION OF THE COURT
Ruben A. Martino, J.
*563 Claimant sues defendant in this small claims case for loss of property due to defendant’s negligence and for services not rendered for monies paid. The case was tried before me on May 8, 2008. Claimant testified on his own behalf. The City of New York did not have any witnesses.
In 2005, claimant rented storage space at the West 79th Street Boat Basin which is owned and operated by the New York City Department of Parks & Recreation. The written agreement contains an exculpatory clause which states:
“I understand that the City of New York Parks & Recreation Department will not be held responsible for any damages incurred to my vessel while at the dinghy dock or while in the facility at the 79th Street Boat Basin, and that I store my vessel at my own risk.”
The policy and practice at the facility was that users would store their vessels in an enclosed cage-like structure which has storage bins. Each user had a key to the caged storage area and had unrestricted access. Within the cage, users could further secure their vessels to the bin with their own devices such as a chain and lock. In July 2007, claimant had two brand new kayaks stolen from the caged storage area. The lock to the storage cage was intact but his kayaks and locks were missing. Claimant reported this theft to the police, staff and management. These were not the subject of this lawsuit. Claimant indicated to the Boat Basin that he was no longer going to use the facility because of the theft. The head manager of the facility spoke to claimant and urged him to continue using the facility because they were changing their practice and policy by adding more security measures. Only West 79th Street Boat Basin employees would have keys to the caged storage area. Users no longer had unrestricted access and would have to get an employee to escort them, open the lock and admit them to the storage area. Security cameras were going to be installed. The Boat Basin posted a notice with the new changes which said:
“Attention Kayak Owners
“Please see marina staff to gain access to kayak storage area. We have had a security issue and have temporarily changed the locks. We will be adding security cameras to the area shortly. We apologize for any inconvenience in the meantime.”
Based on the assurances by the manager that the security would be better, claimant purchased two used kayaks and again stored them in the caged area. He and the other users no longer *564 had keys to the area and had to be admitted and escorted by an employee to access the vessels in the storage area. On or about July 23, 2007, a week after the first two kayaks were stolen, one of claimant’s replacement kayaks, which cost $1,400, was missing from the storage area. Claimant filed a notice of claim and thereafter started this case. He sues for the value of the missing kayak and a refund of the unused portion of the storage fee.
The general rule is that a marina is not liable for negligence for loss of a vessel not due to the condition of the docking facility (Milo v Biegler, 86 AD2d 503 [1st Dept 1982]). The privilege of keeping a vessel in a marina without an agreement to keep daily or continuous guard over the vessel or without the marina taking over or assuming the custody of the vessel does not constitute a bailment (id.). This was initially the situation under the original arrangement between claimant and defendant. Claimant had exclusive custody of his vessels and unrestricted access because he had the key to the storage area. He had the privilege of storing his kayaks there but defendant was not an insurer. However, the arrangement between the parties changed when defendant took custody of the kayaks by retaining the key and controlling access to the kayaks, notifying users that this was the new temporary policy, promising better security and urging claimant to keep his kayaks there because of the new security measures. Under these facts a bailment was established. This is similar to the case of Snyder v Four Winds Sailboat Ctr., Ltd. (701 F2d 251 [2d Cir 1983]), where a boat owner sued a marina for loss of a stolen boat. The court found that because the marina had the keys and agreed to store the vessel, a bailment was created. A bailment gives rise to the duty of exercising ordinary care in keeping and safeguarding property (id.). In the instant case, claimant has made out a prima facie case of breach of that duty by establishing that defendant had exclusive possession of the kayak under lock and key and that the kayak is now missing. It then becomes the obligation of the defendant to come forward with evidence to rebut the presumption of negligence (I.C.C. Metals v Municipal Warehouse Co., 50 NY2d 657 [1980]). Here, defendant did not come forward with any evidence and argues that it had no duty of care. However, when defendant took exclusive custody of claimant’s kayak and urged him to continue using the facility because of its improved security, it created the duty of ordinary care in safeguarding the property.
Defendant argues that it cannot be held liable for negligence because of the exculpatory clause in the original 2005 contract *565 which claimant concedes was subsequently renewed by his yearly payments. Although exculpatory clauses are enforceable, they are strictly construed against the party seeking exemption from liability (Shalman v Board of Educ. of Cent. School Dist. No. 1, 31 AD2d 338 [3d Dept 1969]). Unless the intention of the parties to insulate one of them from liability for its own negligence is expressed in unequivocal terms, the exculpatory clause will not operate to have such an effect (Reeves v Welch, 127 AD2d 1000 [4th Dept 1987]). The exculpatory clause in this case is vague and does not suggest an intent to shield the defendant from its own negligence in carrying out its duty to care for claimant’s kayak. This makes perfect sense because the City did not initially have any duty to safeguard claimant’s vessel. There was no bailment. Claimant had the key to the storage cage and retained custody and control of his kayak. He stored the vessel at his own risk and the Boat Basin would not be responsible for any damages. This was the intent of the exculpatory clause. However, the relationship changed when the defendant took it upon itself to secure and take control of claimant’s vessel. Defendant now had the only key and assured claimant that his kayaks would be safer under defendant’s custody because of the heightened security. The initial contract could not have been meant to cover this new arrangement. The court holds that under the facts of this case, a bailment was created and defendant was negligent by breaching its duty of care. The exculpatory clause in the original contract is too vague to shield defendant from liability for its own negligence.
Claimant’s cause of action for the balance of the unused storage fee is dismissed. He never requested a refund and was never denied use of the storage space. He chose to stop using the facility.
Accordingly, claimant is awarded a judgment for $1,400 representing the value of the missing kayak plus disbursements and interest from July 23, 2007.