**MILLER'S TURNKEY TRANSPORT, INC., Appellant,**

**v.**

**CYBERTEK, INC. and Paradox a/k/a Paradox Technologies, Inc., Appellees.**

No. 57A03–0703–CV–92.

Court of Appeals of Indiana.

Dec. 17, 2007.

Rehearing Denied Feb. 28, 2008.

Lynne D. Lidke, A. Jack Finklea, Scopelitis, Garvin, Light & Hanson, Indianapolis, IN, Attorneys for Appellant.

Latr021alle Wheat, Angola, IN, Daniel F. Diggins, Emerick & Diggins, P.C., Kendallville, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Miller's Turnkey Transport, Inc. ("Miller") appeals the trial court's judgment in favor of Cybertek, Inc. and Paradox a/k/a Paradox Technologies, Inc. (collectively "Cybertek") on Cybertek's counterclaim. We affirm.

### Issues

Miller raises three issues, which we consolidate and re-state as follows:

I. Whether the trial court erred in concluding that Miller's enforcement of its warehouseman's lien did not comply with the Uniform Commercial Code ("UCC"); and

II. Whether the trial court clearly erred in finding that Cybertek suffered $93,500 in damages resulting from Miller's sale of goods.

### Facts and Procedural History

Miller and Cybertek agreed that Cybertek would store certain goods at Miller for a fee. On April 30, 2002, Cybertek delivered its equipment to Miller, but Cybertek paid no rent.

On June 14, 2005, Miller sued Cybertek for rents due and to foreclose on its possessory lien. Cybertek answered, denying most of the allegations. Miller moved for summary judgment. The trial court granted Cybertek's Motion for Leave to File Counter–Claim.[1] On December 7, 2005, the trial court granted summary judgment as to Cybertek's liability, but held that there were "issues of material fact concerning damages." Appendix at 2. Sometime in December of 2005, Miller moved two of Cybertek's items to Noble Paint for possible purchase.

On January 18, 2006, the trial court entered judgment for Miller, ordering Cybertek to pay Miller $23,620.87 and as follows:

The court forecloses the possessory lien held by [Miller] and orders that the property held by [Miller] be sold at a sheriff's sale as provided by law. If the defendants believe that the items will be

---

1. The original counterclaim, the first amended counterclaim, and Miller's answers to

them are not in the record.

sold for less than their fair market value, they may bid on those items at the sheriff's sale.

*Id.* at 24. Less than two months later, in a private sale rather than a sheriff's sale, Miller sold Cybertek's equipment to Noble Paint for $45,000.[2] Two shuttle tables were sold for scrap for $140 each. Certain other items were thrown away.

On June 13, 2006, Cybertek filed its Second Amended Counter–Claim, alleging that Miller: (1) caused Cybertek to lose a potential sale of goods, (2) damaged some goods, (3) transferred goods to Noble Paint without authority, (4) converted goods, (5) committed criminal conversion, (6) exercised unauthorized control of sale proceeds, and (7) committed contempt of court. As relief, Cybertek sought $93,500 in compensatory damages, in addition to treble damages, punitive damages, pre-judgment interest, and attorney fees. Miller denied most of the allegations.

After a bench trial, the trial court determined that Miller's enforcement of its lien did not comply with the UCC and found that the fair market value of the goods held by Miller was $93,500. The trial court entered judgment on Cybertek's Second Amended Counter–Claim and ordered Miller to pay Cybertek $93,500, but denied all other relief.

Miller now appeals the judgment on Cybertek's counterclaim.

## Discussion and Decision

### I. Enforcement of Warehouseman's Lien pursuant to the UCC

#### A. Standard of Review

 On appeal, Miller argues that the trial court erred in concluding that it failed to enforce its warehouseman's lien in compliance with Indiana Code Section 26–1–7–210 ("Section 210").[3] Where a trial court enters special findings at the request of a party, we conduct the following review:

> [W]e determine whether the evidence supports the trial court's findings, and we determine whether the findings support the judgment. We will not disturb the trial court's findings or judgment unless they are clearly erroneous. Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions which rely upon those findings. In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom.

*Infinity Products, Inc. v. Quandt,* 810 N.E.2d 1028, 1031 (Ind.2004) (quoting *Bussing v. Ind. Dep't of Transp.,* 779 N.E.2d 98, 102 (Ind.Ct.App.2002), *trans. denied* ), *reh'g denied.*

#### B. Analysis

Under certain circumstances, a warehouseman has a lien on goods in his possession.[4] Ind.Code § 26–1–7–209. Section 210 provides two alternative methods of enforcing a warehouseman's lien. Under subsection (1), a warehouseman may sell goods by public or private sale "in a commercially reasonable manner," after

---

2. Pursuant to Miller's motion, the trial court ordered Miller to deposit with the Clerk of Court the $45,000.

3. This section was amended by the General Assembly, effective July 1, 2007. P.L. 143-2007, sec. 39. In this Opinion, we apply the previous version of the statute.

4. In light of our decision, we do not reach Cybertek's arguments that: (1) Miller did not have a warehouseman's lien because it lacked a warehouse receipt covering the goods, and (2) Miller relinquished any lien by delivering certain of the items to Noble Paint.

providing nominal notice. I.C. § 26–1–7–210(1). Subsection (2) requires more formal notice and defines explicitly the manner of sale. I.C. § 26–1–7–210(2). The choice of which subsection to apply depends on whether the goods are "stored by a merchant in the course of his business." I.C. 26–1–7–210(2). In the phrase "stored by a merchant," the word "merchant" has been interpreted to mean the owner of the goods, rather than the warehouseman. *Bradford v. Muinzer*, 498 F.Supp. 1384, 1388–89 (N.D.Ill.1980) (applying I.C. § 26–1–7–210 and concluding that "subsection (2) imposes stricter or additional requirements on a warehouseman's selling a non-merchant's goods"); 3 James J. White & Robert S. Summers, Uniform Commercial Code § 28–6 (4th ed.1995). Thus, the distinction in how Miller was authorized to sell the goods is based upon whether Cybertek was a merchant. However, the trial court's findings did not address whether Cybertek was a merchant or whether Cybertek stored its equipment with Miller in the course of Cybertek's business. Furthermore, the trial court cited both subsections in its conclusions of law, making it unclear which subsection it was applying.

As to notice, the trial court found and concluded as follows:

### Findings of Fact

7. On February 28, 2006 Miller sold a portion of the equipment to *Noble Paint* for $45,000 without the consent of Cybertek and by means of a private sale. In a telephone call after the sale had been consummated on March 1, 2006 between the principals of Miller and Cybertek, Cybertek agreed to the sale on the condition that there be an inspection of the equipment, and with the understanding that Cybertek would

pursue damages resulting from damage to the equipment. Miller did not disclose that the sale had already taken place. No inspection took place.

. . .

### Conclusions of Law

. . .

B. [Indiana Code Section] 26–1–7–210(1) provides for the enforcement of the warehouseman's lien. The lien may be enforced by a public or private sale in a commercially reasonable manner after notification of all persons who claim an interest in the property. The statute requires that the notice include a statement of the amount due, the nature of the proposed sale, and the time and place of any public sale. [Indiana Code Section] 26–1–7–210(2)(b) provides that the notification must be delivered to the person or sent by registered mail.

C. Miller failed to provide the notice required by [Indiana Code Section] 26–1–7–210.

App. at 8, 9. Regardless of which subsection the trial court was applying, it appears to have found in paragraph seven that Miller provided no advance notice at all. Indeed, to the contrary, the trial court effectively found that Miller was purporting to continue negotiations regarding the sale even after it had sold the goods.

█ There was evidence that the sale occurred on February 27 or 28, 2006. Miller's owner, David Miller ("David"), testified that on March 1, 2006, he recorded a telephone call between himself and Cybertek's owner, Bruce Fryburger ("Bruce"). On appeal, Miller asserts that the conversation was evidence that Cybertek gave its authority for the sale. However, the con-

versation, detailed below, was far from unambiguous.[5]

> Bruce: I apologize for not getting back to you sooner and our agreement as far as that (indiscernible) I'm not backing out on that I told you that when I talked to you Monday.
>
> . . .
>
> Bruce: And what I'd like to do is stop [communicating through counsel] so you and I can come to an agreement get this s___ done [be]cause we're both racking up [legal] bills every time they want [to] be involved.
>
> David: You're absolutely right . . .
>
> . . .
>
> David: Alright tell me what you want to do because these people plugged down their 45 it's in escrow it's there no[w] what do you want to do?
>
> . . . [discussion of escrow account]
>
> David: But when I told you if these people put up the $45,000 it was as is the way it is and no bulls___ after that, all the lawsuits went away and it was a done deal and I said that three times to you and three times you said yes.
>
> Bruce: I'm not going to say I don't remember all I remember is that we discussed 45 we are in agreement on that and that was the agreement as far as getting that sold and then we would talk about the other I still needed the guy to inspect that and then I ask you take a look at you know the damages and I told [you] we need to take a look about reducing it because of damage to the one machine . . .

Transcript at 652–54. Bruce testified that in a prior conversation he informed David that he had two other potential buyers and that he "wanted to hold off" on the sale.

*Id.* at 440. Essentially, the trial court determined that Miller did not give Cybertek any definitive notice of the sale until after it had occurred. The evidence supports the trial court's finding that the parties were still haggling, even after the sale. Accordingly, the trial court did not err in concluding that Miller failed to provide notice pursuant to even the more lenient provisions of subsection (1).

Alternatively, we consider the trial court's conclusion that the sale was not commercially reasonable, as required by subsection (1). The trial court concluded as follows:

> G. The fair market value of the goods held by Miller was Ninety–Three Thousand Five Hundred Dollars ($93,500.00).
>
> H. I.C. 26–1–7–209(1) provides: "A sale of more goods than apparently necessary to be offered to insure satisfaction of the obligation is not commercially reasonable...." (omission in original)
>
> I. Miller sold more goods than were needed to satisfy the Twenty–Three Thousand Six–Hundred Twenty Dollars and Eighty–Seven Cent ($23,620.87) judgment.

App. at 9.

Under subsection (1) a warehouseman's sale of a merchant's goods must be commercially reasonable. I.C. § 26–1–7–210(1). Subsection (1) defines what is commercially reasonable.

> The warehouse sells in a commercially reasonable manner if the warehouse sells the goods in the usual manner in any recognized market therefor, sells at the price current in that market at the time of the warehouse's sale, or other-

---

5. The entirety of the tape was admitted into evidence and constituted more than six pages of transcript.

wise sells in conformity with commercially reasonable practices among dealers in the type of goods sold. A sale of more goods than apparently necessary to be offered to ensure satisfaction of the obligation is not commercially reasonable *except in cases covered by the preceding sentence.*

*Id.* (emphasis added). As Miller notes on appeal, the trial court did not address whether the sale was otherwise commercially reasonable, as required by the last phrase of subsection (1).

There was no evidence regarding recognized markets for the goods or the practices among dealers of such goods. Neither the statute nor treatises on the UCC provide guidance on who has the burden of proof on this issue. The District of Columbia Court of Appeals has held that "[w]hen a warehouseman is sued for conversion of goods that were stored in its warehouse, the burden is on the warehouseman to prove a valid foreclosure of its lien." *Kearns v. McNeill Bros. Moving & Storage Co.,* 509 A.2d 1132, 1138 (D.C. 1986) (citing *Flores v. Didear Van & Storage Co.,* 489 S.W.2d 406, 407 (Tex.Civ.App. 1972)). *Cf. Shimamoto v. S & F Warehouses, Inc.,* 99 N.Y.2d 165, 753 N.Y.S.2d 419, 783 N.E.2d 484, 490 (2002) ("plaintiff is obliged to show how some aspect of the sale rendered it commercially unreasonable"). We conclude, especially in light of Cybertek's establishing that the value of the goods sold far exceeded the rents due, that Miller had the burden of proving that its sale was otherwise commercially reasonable. Miller presented no evidence that it sold the goods "in the usual manner in any recognized market therefor," what the price would have been in such a market, or what were "commercially reasonable practices among dealers in the type of goods sold." I.C. § 26–1–7–210(1). In light of the notice and the manner of sale, we conclude that the trial court did not err in concluding that Miller failed to enforce its warehouseman's lien pursuant to Indiana Code Section 26–1–7–210.

*II. Finding of $93,500 in Damages*

A. Standard of Review

■ Where a warehouseman fails to comply with Section 210, he is liable for damages caused by that failure. I.C. 26–1–7–210(9). Miller argues that the trial court clearly erred in finding that the value of the goods it held was $93,500. We set aside a trial court's finding only if it is clearly erroneous. *Fraley v. Minger,* 829 N.E.2d 476, 482 (Ind.2005). "We do not reweigh evidence, and we consider only evidence most favorable to the trial court judgment and all reasonable inferences arising from that evidence." *Farley Neighborhood Ass'n v. Town of Speedway,* 765 N.E.2d 1226, 1229–30 (Ind.2002).

B. Analysis

■ Cybertek presented the testimony of Michael Katz, who bought and sold automation equipment for a manufacturer of robots and automation equipment. Katz assessed the value of Cybertek's equipment to be in the "mid to high 90's." Tr. at 361. Cybertek also introduced a letter from Katz, in which he wrote:

> I have inspected the equipment [Cybertek] currently has for sale. Based on my years of attending numerous auctions, and being in the business of buying and selling this type of equipment, I feel $93,500 is a fair market price, of the items I have seen.

Exhibit F. The trial court found the fair market value of the goods to be precisely $93,500. The trial court did not clearly err in making this finding.

Conclusion

The trial court did not err in concluding that Miller's enforcement of its warehouse-

man's lien did not comply with the UCC. The trial court did not clearly err in finding that the value of the goods sold was $93,500. Because the sale proceeds remain in escrow, we affirm and remand this matter to the trial court so that it may fashion an appropriate order to account for Miller's judgment, Cybertek's judgment, and the escrowed sale proceeds.[6]

Affirmed.

BAKER, C.J., and VAIDIK, J., concur.

---

6. Miller notes that its judgment of $23,620.87 has not yet been satisfied and that the sale proceeds of $45,000 remain in escrow. Appellant's Brief at 11 n. 4.